UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**DAVID L. JENSEN**,                                          Case No. 6:13-cv-00419-KI

                              Plaintiff,                      OPINION AND ORDER

        v.

**COMMISSIONER, SOCIAL SECURITY**,

                              Defendant.

        Richard F. McGinty
        McGinty & Belcher, Attorneys
        P.O. Box 12806
        Salem, OR 97309-0806

                Attorney for Plaintiff

        S. Amanda Marshall
        United States Attorney
        District of Oregon
        Ronald K. Silver
        Assistant United States Attorney
        1000 S.W. Third Ave., Suite 600
        Portland, OR 97201-2902

Page 1 - OPINION AND ORDER

Carol A. Hoch
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

KING, Judge:

Plaintiff David L. Jensen brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying Jensen's application for disability insurance benefits ("DIB"). I affirm the decision of the Commissioner.

## BACKGROUND

Jensen filed an application for DIB on June 27, 2007. The application was denied initially and upon reconsideration. After a timely request for a hearing, Jensen, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on April 7, 2010.

On June 8, 2010, the ALJ issued a decision finding Jensen was not disabled within the meaning of the Act and therefore not entitled to benefits. The Appeals Council remanded the case to the ALJ on May 20, 2011, directing the ALJ to reassess Jensen's mental impairment, resolve the effect of mild to moderate pain on Jensen's functional limitations, and discuss Jensen's wife's observations.

On February 17, 2012, Jensen appeared and testified again before an ALJ. On March 9, 2012, the ALJ issued a decision finding Jensen not disabled. This decision became the final

Page 2 - OPINION AND ORDER

decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on January 29, 2013.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R.

§§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

**STANDARD OF REVIEW**

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id. at 1111.

**THE ALJ'S DECISION**

The ALJ concluded Jensen has the severe impairments of:  multiple arthralgias possibly due to palindromic rheumatoid arthritis; left knee severe osteoarthritis of the patellofemoral compartment; bipolar disorder; somatoform disorder; rotator cuff syndrome; obesity; and right shoulder osteoarthritis.  The ALJ found that these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

The ALJ found Jensen can perform light work, but cannot climb ladders, ropes and scaffolds.  He also cannot kneel or crawl, but can frequently stoop, crouch, and reach overhead bilaterally.  He should be permitted to sit or stand at will while performing essential tasks.  He can have occasional coworker contact, but no teamwork, and should avoid contact with the public.  He should avoid hazardous work, like heights and moving machinery.  He can understand and carry out simple instructions.  Given this residual functional capacity ("RFC") Jensen cannot perform his past work, but can work as a folder, sorter, and electronics worker.

**FACTS**

Jensen was 40 years old on May 1, 2006, his alleged disability onset date.  Before then, he worked for more than twenty years as a millwright.  He earned a total of $44,820.42 in 2006 and $15,442.70 in 2007, but has not received any income since 2007.

Jensen complained of bilateral knee pain in March 2006 and his physician, Megan L. Spohr, M.D., referred him to Bobby Han, M.D., a rheumatologist.  At that time, she was treating Jensen's knee and elbow pain with oxycodone and medical marijuana, and his depression with Wellbutrin.

At the end of March 2006, Dr. Han examined Jensen, noting pain in his knees and in other joints off and on, but finding his physical examination to be unremarkable.  Dr. Han prescribed hydroxychloroquine and prednisone, and ran some tests.

Jensen's employer sent him to an occupational specialist, Christopher Swan, M.D., M.S., in May 2006.  On May 1, Jensen told Dr. Swan he felt he could perform his normal work duties, although he may have flare ups of joint pain and have to call in sick.  A week later, Jensen returned to Dr. Swan to obtain some work restrictions until his medication became effective.  Dr. Swan limited Jensen to pushing and pulling up to 50 pounds and using a step ladder only up to three feet.  On May 11, Jensen reported to Dr. Swan that he had only worked half time because of pain in his knees that waxed and waned.  Dr. Swan found Jensen could not perform his work and excused him for a month.

On May 18, 2006, Dr. Han noted the hydroxycholoquine had no effect on Jensen's pain, but the prednisone helped a little.  Jensen's lab tests showed positive anti-CCP antibodies which is specific to rheumatoid arthritis.  Dr. Han added methotrexate to Jensen's medication list.

Dr. Swan excused Jensen for another month on June 12, 2006.

On July 25, 2006, Jensen followed up with Dr. Spohr.  He was taking methotrexate, folic acid, and Plaquenil, as well as Wellbutrin for depression.  He reported doing better, but with pain in his elbows and knees.  He was still off work.  She re-certified him for medical marijuana for his chronic pain.

Jensen saw Dr. Han in June, August, October and November 2006, each time reporting migrating pain in his knees, hips, hands, ankles, shoulders and elbows.  He had tried various anti-rheumatic drugs without benefit, but had stopped taking the Percocet.  He reported good days and bad days.

He saw Dr. Han three times in early 2007, and reported he had stopped taking prescription medications for rheumatoid arthritis.  He was only taking ibuprofen.

Jensen established care with Lester Hands, M.D., in April 2007, after Dr. Spohr moved. Jensen reported pain in his hips and knees, as well as anger and trouble sleeping, and depression at times.  Dr. Hands noted Jensen scored on the bipolar spectrum disorder in the "moderate probability" range, but he doubted bipolar disorder was an appropriate diagnosis at that time.  Dr. Hands prescribed lithium for Jensen's anger.  A month later, both Jensen and his wife reported he was doing better.  Jensen reported that Dr. Han had released him to work with limitations, but that his employer was unable to return him to his position as a millwright.  When Dr. Hands saw Jensen on May 31, 2007, Dr. Hands noted that the x-rays of Jensen's left knee and MRI of his right shoulder supported a diagnosis of osteoarthritis.  He had doubts about the rheumatoid arthritis diagnosis and referred Jensen to Dr. Cassell.  The lithium had helped Jensen's anger.

On July 9, 2007, a little over a year after Jensen had last been to Dr. Swan, Jensen told Dr. Swan that his medications had not successfully treated his rheumatoid arthritis; Dr. Swan opined that Jensen did not qualify for millwright work.  Dr. Swan concluded instead that Jensen was limited to light or medium labor, allowing frequent position changes without any kneeling, squatting, or working at exposed heights.  Dr. Swan felt Jensen had "significant employable capabilities[.]"  Tr. 290.

Dr. Cassell called Dr. Hands on September 6, 2007 and opined that Jensen's main problem "is a psychosocial downspiral."  Tr. 342.  Dr. Cassell knew "for sure" that Jensen had osteoarthritis of the shoulder and knee, may have fibromyalgia, and that even if Jensen had rheumatoid arthritis "he is not at risk for bad outcomes."  Id.  Dr. Cassell found Jensen's "reporting is somewhat typical of someone fighting for disability as he seems rather argumentative."  Tr. 343.

On November 7, 2007, at the request of Disability Determination Services ("DDS"), William A. McConochie, Ph.D., examined Jensen.  Jensen reported only physical problems.  Dr. McConochie diagnosed Adjustment Disorder, with depressed mood, as a result of chronic physical pain.  Dr. McConochie noted that while Jensen "loses his temper verbally occasionally, this does not appear to rise to the level of a clinical condition."  Tr. 298.  He also diagnosed "[c]hronic pain from arthritis, tendonitis, etc. and diabetes, apparently managed with diet, both as reported by medical information and client comments."  Id.  Dr. McConochie concluded Jensen has no limitations in sustaining concentration and attention, engaging in appropriate social interaction, but is mildly impaired in understanding and remembering instructions.

On November 12, 2007, Kurt Brewster, M.D., evaluated Jensen at the request of DDS. Jensen reported a history of symptoms since the age of 10, but could not provide any work-up or evaluations. He reported being able to care of himself, and that he spent two hours a day doing dishes, sweeping and vacuuming, washing and folding clothes, or cooking. Jensen estimated that he was spending two hours a day walking, two hours a day standing, two hours watching television, one hour reading, and one hour driving. Dr. Brewster opined that Jensen's symptoms are not consistent with rheumatoid arthritis, and noted he displayed a "well-preserved range of motion and at-or-above normal grip strength for his age." Tr. 311. Additionally, Jensen displayed only "some asymmetry of reflexes and crepitus" in his shoulder. Id. Dr. Brewster concluded Jensen can stand for six hours in an eight-hour day, has no sitting restrictions, no restrictions on weight bearing, and occasional restrictions on reaching, grasping and pulling.

Dr. Hands treated Jensen on December 3, 2007 for joint pains, for which aspirin or ibuprofen helped a little. Jensen reported pain most of the time, which was worse with bad weather. His mood and anger problems were well-controlled with lithium.

In January 2008, Dr. Han noted that Jensen's lab results from Dr. Hands were negative for rheumatoid arthritis. Dr. Han recommended running the tests again. In April 2008, Dr. Han reported Jensen's anti-CCP test was "strongly positive and it is pretty specific for RA." Tr. 356. Jensen did not want to try any anti-rheumatic drugs. That visit, Dr. Han also added a diagnosis of bipolar disorder in Jensen's chart.

Jensen continued to see Dr. Hands from 2008 through 2011. He regularly reported pain in his knees, shoulders, and hands, but noted it was better with more activity. He occasionally

treated his pain with oxycodone, but mostly relied on medical marijuana and aspirin.  He also

expressed good anger control, mood control, and happiness on lithium.

At the request of Jensen's attorneys, John Cochran, Ph.D., examined Jensen in January

2010 and identified moderate to moderately severe limitations in most mental functions.

Jensen's overall I.Q. was in the low average range.  Dr. Cochran diagnosed major depressive

disorder, undifferentiated somatoform disorder, generalized anxiety disorder, and dysthymic

disorder on Axis I.  On Axis II, he diagnosed personality disorder NOS with avoidant, antisocial,

and negativistic features.  He assigned a Global Assessment of Functioning Score of 50.[1]

Interpreting the test scores, Dr. Cochran thought Jensen would be able to understand and follow

basic instructions, but that his anxiety may make complex verbal instructions difficult.  Dr.

Cochran opined that Jensen's anxiety and depressive symptoms "may tend to become more

problematic in his life and continue to limit his functioning."  Tr. 393.

Dr. Hands continued to treat Jensen.  The last medical record from him is dated

December 29, 2011, in which he reported Jensen's medication is working well for his bipolar

disorder.  Jensen was pleasant and smiling, but his knees were bothering him due to the onset of

cool, wet weather.  The pain was not serious enough to stop him from walking.  He was

continuing prescriptions of oxycodone as needed, lithium, and Lamotrigine.

---

[1]The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 41 to 50 points means, "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."  The American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 34 (4th ed. 2000) ("DSM-IV").

**DISCUSSION**

Jensen challenges the ALJ's inclusion of bipolar disorder as a severe impairment, while leaving out major depressive disorder, personality disorder, and generalized anxiety disorder. Jensen also takes issue with the ALJ's treatment of the opinions authored by Dr. McConochie and Dr. Cochran. Finally, he challenges the ALJ's determination that somatoform disorder impairs only Jensen's ability to maintain attention and concentration without addressing other potential functional limitations caused by the disorder.

I.    <u>Severe Impairments</u>

Jensen challenges the ALJ's decision to land on bipolar disorder as one of Jensen's severe impairments, claiming there is no medical evidence to support the diagnosis. I disagree for several reasons. First, Jensen himself testified to having bipolar disorder. Tr. 33. Additionally, the ALJ referenced Dr. Hands' notation of the moderate possibility Jensen suffered from a bipolar spectrum disorder, so there was some medical support for such a diagnosis. Tr. 18; Tr. 346. Indeed, Dr. Hands subsequently diagnosed bipolar disorder. Tr. 400 (1/31/2012); Tr. 415 (12/14/2009). Regardless, Jensen fails to explain how the ALJ's analysis of his functional limitations is affected by a diagnosis of bipolar disorder as opposed to a different mental illness.[2]

Jensen suggests the ALJ erred by not adopting Dr. Cochran's other diagnoses. Again, I disagree. With respect to generalized anxiety disorder, the ALJ specifically explained that no other physician had documented any complaints from Jensen about anxiety, that Dr. Cochran did not have all the medical records and had no treating relationship with Jensen, that Dr. Cochran

_____

[2]Nor does Jensen explain why it matters that the ALJ did not identify which kind of bipolar disorder–whether Bipolar I or II–he has.

overly relied on Jensen's statements to support the diagnosis, and that Jensen knew Dr. Cochran's assessment was for the purpose of evaluating the existence of any disability. The ALJ gave sufficient reasons for finding generalized anxiety disorder is not a severe impairment.

In addition, Jensen does not suggest major depressive disorder and dysthymic disorder functionally impair him in ways not captured by the severe impairments identified by the ALJ. In other words, he does not explain how identifying bipolar disorder and somatoform disorder as his severe impairments affected the remainder of the ALJ's analysis. Indeed, in step 3, the ALJ specifically considered "evidence of bipolar disorder, depressed mood, dysthymia, anger, and undifferentiated somatoform disorder." Tr. 14; see also Tr. 18 (evaluating Jensen's mental functioning and concluding Jensen's "mood and other mental symptoms were well managed by medication"). Accordingly, any error in the ALJ's failure to include major depressive disorder and dysthymic disorder as severe impairments is harmless. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Finally, for the reasons I explain below, the ALJ properly rejected Dr. Cochran's assessment, so inclusion of a diagnosis of personality disorder as a severe impairment was not warranted.

The ALJ did not err.

II.    Medical Evidence

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may

only reject it for clear and convincing reasons.  Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Widmark, 454 F.3d at 1066 n.2.

      A.     Dr. McConochie

Dr. McConochie concluded Jensen "does not appear to have any major psychological limitations to work activity."  Tr. 299.  The ALJ gave the opinion partial weight, but only to the extent it was consistent with newer assessments.  Jensen oddly complains that the ALJ wrongly determined Jensen suffered some impairment in maintaining concentration and attention when Dr. McConochie determined he had no impairment in those areas.  Tr. 299.  To the extent the ALJ may have erred in this inconsistency, it was to Jensen's benefit.

      B.     Dr. Cochran

Jensen next takes issue with the ALJ's having assigned only partial weight to Dr. Cochran's assessment.  The ALJ did not accept Dr. Cochran's diagnoses of depression, generalized anxiety disorder, dysthymic disorder, and personality disorder.  Additionally, Jensen notes the ALJ accepted Jensen's "social discomfort, as documented by Dr. Cochran[,]" but did not address additional limitations related to social interactions such as accepting supervisor criticism and maintaining socially appropriate behavior.  Tr. 19.  Finally, Jensen disputes the

ALJ's conclusion that Dr. Cochran's analysis was inconsistent with more recent medical evidence.

Because Dr. Cochran's assessment is contradicted by Dr. McConochie and the state agency reviewing psychological consultant, the ALJ was required to provide specific and legitimate reasons to reject Dr. Cochran's report.

The ALJ expressed a number of reasons for questioning the persuasiveness of Dr. Cochran's assessment. The doctor had no personal treatment history with Jensen, he did not have many medical records related to Jensen's mental condition and he relied a great deal on Jensen's own statements about his symptoms. The fact that Jensen was aware the examination was being prepared just before his hearing suggested to the ALJ that he may have been exaggerating his symptoms, particularly when no other treatment providers documented the level of anxiety he described. A physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).[3]

Additionally, while the ALJ accepted Jensen's testimony about his social discomfort "in the light most favorable to him" by limiting him to occasional co-worker interaction in jobs and avoiding contact with the general public, Jensen did not testify about problems with supervisors. Tr. 19. Furthermore, I can infer from the ALJ's analysis that she concluded most of Dr. Cochran's limitations were not supported by the record. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (district court may draw specific and legitimate inferences from ALJ's opinion). Specifically, although the basis for Dr. Cochrane's opinion with respect to supervisor

---

[3]Jensen does not challenge the ALJ's credibility assessment.

criticism and maintaining socially appropriate behavior is not entirely evident, he concluded Jensen was unsuitable for work due to "a history of substance abuse, repeated poor judgment, emotional instability, lack of self-control and becoming rageful and wanting to destroy and kill people[.]" Tr. 387. However, as I discuss more thoroughly below, and as the ALJ recognized, treatment records repeatedly indicated lithium controls Jensen's anger. Indeed, Dr. Cochrane himself reported that Jensen has never been fired and got good progress reports at work. Tr. 385; Tr. 389 (also found Jensen "did not show problems in his social judgment"). Further, Jensen told Dr. McConochie his only problems with working were physical problems. Tr. 295; Tr. 299 ("He said that if his pain and sleep problems were not present he would be able to work."); see also Tr. 297 (Jensen told Dr. McConochie he is "sensitive to criticism, though he is open to constructive criticism").

As the ALJ recognized, more recent treatment records reflect Jensen's improvement on lithium. Jensen cites excerpts from the record suggesting the opposite, but Dr. Hands' records overwhelmingly support improvement in Jensen's mental health. Tr. 422 ("He now realizes that lithium helps keep him calm. It does more for him after he has been taking it for a while."); Tr. 411 ("pleasant; not overly manicy or depressed or anxious."); Tr. 409 ("pleasant"; "[n]o overt anxiety, depression, or mania"); Tr. 408 ("He is calm, pleasant. He and his wife interact well."); Tr. 407 ("Mood: cooperative, calm."); Tr. 405 ("His wife is liking the difference she is seeing in his behavior . . . . He is pleasant, cheerful."); Tr. 407 ("[s]omething that normally would blow him up he is now laughing at"). The "consistency of the medical opinion with the record as a whole" is a relevant factor in evaluating a medical opinion. Orn, 495 F.3d at 631.

In sum, the ALJ offered specific and legitimate reasons, supported by substantial

evidence in the record, for finding Dr. Cochrane's evaluation not entirely persuasive.

III.    <u>Residual Functional Capacity</u>

Jensen finally argues that the ALJ improperly associated only attention and concentration

problems with the somatoform disorder when Dr. Cochran identified other functional limitations

as well.

The ALJ concluded the following:

> Dr. Cochran's mental functioning assessment is not entirely consistent with more
> recent medical evidence, but nevertheless supports a clinical diagnosis of a
> somatoform disorder.  The existence of such a disorder very likely explains why
> Mr. Jensen believed his psychiatric medication (lithium) actually reduced his joint
> pain.  A somatoform disorder could impair an individual's ability to maintain
> concentration and attention and therefore reasonably restrict Mr. Jensen to tasks
> involving simple instructions.

Tr. 19 (internal citations omitted).

Dr. Cochran did not parse out the functional limitations associated with each diagnosis in

his evaluation.  He did note that those suffering from somatoform disorder may "have problems

in concentrating and attending."  Tr. 390.  Accordingly, although Dr. Cochran noted no "deficits

in his attention and concentration" in test-taking, he did opine Jensen demonstrated a moderate

impairment (meaning 1 hour to 1 1/2 hours per day) in maintaining attention and concentration.

<u>Cf.</u> Tr. 389 <u>with</u> Tr. 381.  Nevertheless, Dr. Cochrane believed Jensen displayed only mild

limitations in *understanding and remembering* very short, simple instructions, and mild

limitations in *carrying out* very short and simple instructions.  Tr. 381; Tr. 393 ("His auditory

memory scores suggest that he has the ability to understand and follow basic instructions.").

The ALJ assessed plaintiff's RFC after considering the entire record.  The ALJ's opinion that Jensen could understand and carry out simple instructions, despite an impairment in maintaining attention and concentration, is supported both by Dr. Cochrane's conclusion that Jensen could follow basic instructions and by other substantial evidence in the record.  See Tr. 298-99 (Dr. McConochie concluded Jensen can "handle simple routine activities of daily living within limits imposed by his pain problems but that Claimant does not appear to have any major psychological limitations to work activity.").  The ALJ gave specific and legitimate reasons to reject the remainder of Dr. Cochran's opinion, as I have explained above.  Magallanes, 881 F.2d at 756-57 ("The limitation of evidence in a hypothetical question is objectionable only if the assumed facts could not be supported by the record.").

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards.  For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this ___3rd___ day of June, 2014.


   /s/ Garr M. King_____
Garr M. King
United States District Judge




Page 17 - OPINION AND ORDER